## SADDLER *vs.* LEE *et al.*

1. While, as a general rule, water flowing under the surface may be diverted without liability to a proprietor whose land it might reach in its natural and ordinary course, yet where it has once emerged and afterwards sinks, if its exact course can be traced to where it emerges again, so as to render it certain that it is the same water, the proprietor of the surface at the latter point will be protected in its use the same as if it were not a subterranean stream.

2. Where the chancellor has denied an injunction on a doubtful state of facts, the evidence before him being conflicting, this court will not control him.

Injunction. Actions. Water-course. Before Judge CRISP. Lee County. At Chambers. August 26, 1879.

Reported in the decision.

HAWKINS & HAWKINS, for plaintiff in error.

GUERRY & SON, for defendants.

CRAWFORD, Justice.

Wm. P. Saddler files his bill alleging that he is the owner of a mill, which was and is run by the waters of Saddler's

mill creek, that he and those under whom he claims, have been using the waters of the said creek to run this mill at this point, and at another just above on his own land, uninterruptedly for a great many years. That Sanders W. Lee now deceased, also owned lands on said creek adjoining his, as well as lands on Chickafochee and Chochee creeks, and lying above orator's, on said streams, and on which the said Lee had a mill. That the Saddler creek is mostly an under-ground stream, but its course and direction are distinctly marked by what is called Lime creek, and at intervals running above ground, visible to any observer acquainted with such streams. That Walker Lee and the persons put in possession of the Lee lands, intend to obstruct the waters of said creek, by filling up the same and building a dam, and ditching so as to convey the waters into Chochee creek above the Lee mill, thereby utterly destroying orator's mill property. That Lee has· threatened to divert the said water, and as orator believes has ordered his. agents to do so, and has partially already obstructed its flow. That to allow the water to be diverted from its usual course, where it has flowed for over fifty years, would cause irreparable damage which could not be ascertained or determined.

Orator therefore prays an injunction against any interference with the flow of the water in said stream.

Respondent Lee—showed for cause against granting the injunction his non-residence—his right to ditch his land to protect it, and also to turn said waters into his own pond. Denies any recent interference, has spoken of it, and contemplated doing it in the uncertain future ; when he did it he intended to give the job to some one skilled in such work. Denies that the water of said sink supplies or flows into Saddler's pond, that the water in said sink boils up, and after running a few steps, sinks down again and no man knoweth "whence it cometh or whither it goeth." That the theory of the complainant as to the course and direction of the water is wrong, but if he

were right the stream being underground he has no right to an injunction.

Affidavits were offered in support of the bill and answer. The chancellor, upon the hearing of the application, refused the injunction, and the complainant excepted.

The argument before us was directed to the relative rights of the parties as to the use of this water upon their respective theories of the case.

The use of surface water flowing regularly in well defined banks, is about as well settled as any legal principle can be, and the current of authorities also seems to be about as well settled, that sub-surface water, which without any distinct channel. percolates in veins, oozes and filters from the land of one proprietor into that of another, gives the latter no rights thereto which the law can recognize.

But the case before us is one where it is claimed that the water, though being mostly in an underground *stream*, still its course and direction are distinctly marked, and at intervals running above ground, and is visible to any observer acquainted with such streams; and it is with that character of water, its use and enjoyment, that we are called upon to deal. And first upon the subject to be considered is §3019 of our Code, which, in defining the rights of land owners, declares : "The course of a stream of water underground, and its exact condition before its first use, are so difficult of ascertainment that trespass cannot be brought for any supposed interference with the rights of a proprietor."

As appears from the pleadings and proof in this case, the first use of this water which could be made, would be by the Lee estate, upon which the defendant says, "it boils up, and after running a few steps, sinks down again." The evident intent and meaning of this act is to declare, that where water is underground—even though it may be in a stream, and if its condition and course are not to be fixed and ascertained, then no "supposed interference

with the rights of a proprietor" will authorize a suit for trespass.

But suppose a case arises *after the first use* of water running in a stream, though mostly underground, with its course and direction distinctly marked, and at intervals running above the ground, and visible to any observer acquainted with such streams ; and suppose that heavy investments have been made to utilize *this stream* of water, and that profits arising therefrom have been enjoyed for a quarter of a century or for even a shorter time, shall it be held that such proprietary rights are to be cut off and the property itself destroyed by construing the act adversely to such proprietor? We cannot so hold.

In Wheatly *vs.* Baugh 25 Penn St. Rep., 528, this question was considered, and the Chief Justice says : " In limestone regions streams of great volume and power pursue their subterranean courses for great distances, then emerge from their caverns furnishing power for machinery or supplying towns and settlements with water for all purposes of life ; * * * and to say that these streams might be obstructed, or diverted merely because they run through subterranean channels, is to forget the rights and duties of man in relation to flowing water."

Parke, B., in Dickinson *vs.* The Grand Junction Canal Co., 9. E. L. & E. Rep., 521, says : "Where water is on the surface, the right of the owner of adjoining land to the usufruct of that water is not a doubtful matter of fact ; *
* * and indeed, if the course of a subterranean stream were *well known*, as is the case with many which sink under ground, pursue for a short space a subterranean course, and then emerge again, it could never be contended that the owner of the soil under which the stream flowed could not maintain an action for the diversion of it, if it took place under such circumstances as would have enabled him to recover if the stream had been wholly above ground."

So that, both upon reason and authority, we hold

that the proper construction of our act is, that where the exact course and condition of a stream of water, after its first use, are well defined and ascertained, and the interference with the rights of a proprietor using the water of the stream, is not such as are *supposed*, but *positive* and *certain*, then trespass lies. If there exist under such a state of facts, sufficient grounds to give a court of equity jurisdiction to interfere by injunction, then that remedy would lie.

But before either remedy could be invoked, the party complaining must bring himself clearly ard satisfactorily within our construction of the law, and he would be required to show that the *stream* about to be diverted, was the same which furnished and supplied the water used.

The ground upon which the chancellor put his decision does not appear, but presuming that he ruled the law correctly, and the affidavits showing a doubtful state of facts, we will not reverse his judgment thereon.

Judgment affirmed.