## 47986. NORTH GEORGIA PETROLEUM COMPANY v. LEWIS et al.

ARGUED MARCH 5, 1973 — DECIDED MARCH 15, 1973 — REHEARING DENIED MARCH 30, 1973 — 

*Hammond Johnson, Jr.,* for appellant.

*Robinson, Buice, Harben & Strickland, C. Frank Strickland, Jr., R. Wilson Smith, Jr., John H. Smith,* for appellees.

DEEN, Judge. ■ The appellant contends that the court erred in jury instructions and in denying its motions for

directed verdict and judgment notwithstanding the verdict because the plaintiff cannot recover against it for mere negligence, absent malice or proof that there was an underground stream with defined boundaries. This argument is primarily based on Code § 105-1408: "The course of a stream of water underground, and its exact condition before its first use, are so difficult of ascertainment, that trespass may not be brought for any supposed interference with the rights of a proprietor." This Code section does not prohibit an action for damages for pollution or poisoning of the ground, the water table or underground waters — it deals specifically with the "riparian" rights of the owner of the water in an underground stream. So also, *Stoner v. Patten*, 132 Ga. 178 (63 SE 802) and *Saddler v. Lee*, 66 Ga. 45 (42 AR 62) deal with volume of water use by an alleged servient estate which decreases or destroys the underground stream water supply of a dominant estate. As to contamination without use, "a landowner who is putting his land to a reasonable use is not liable to the owner of neighboring land for the pollution of percolating water unless he has been guilty of negligent conduct." 5 Powell, Real Property, p. 426, § 727. At least 21 states have recognized that contamination of underground supplies of percolating water by oil or gas render the person responsible liable in damages to the aggrieved landowner. See 38 ALR 2d, Anno. "Subterranean Waters — Pollution," pp. 1265, 1291, § 9. The evidence amply supported the verdict and instructions of the court on this subject.

■ Objection was made to the admission in evidence of a jar of soil which had been recovered from the site and which smelled strongly of gasoline. The contents of the exhibit were accounted for from the time they were placed in the jar to the time of trial, but it is contended that there was no showing that the ground was in the same condition it would have been in 24 hours earlier

when work toward removing the 3,000 gallon tank was commenced. As to this, there was testimony that the digging of the tank commenced on February 16; that it was not removed from the ground but there was digging at the sides and underneath the center of the tank large enough for a small dog to go under. An inspector for the State Fire Marshal arrived on the 17th. He tested the general area of the gas tank with an explosion meter, and in the mud and dirt at the side of the tank, where the remainder of the loose dirt was being removed with shovels. The dirt in the jar was scooped up by him from the bottom side near the center of the tank. Two months later, when tested with heat, it ignited, showing that it had been saturated. There was no objection to this evidence. Other testimony shows that earth had also been burned the day before, that it was moist and had the smell of gasoline, that the dirt in the jar was not taken from the surface but from the bottom of the hole, and that the tank was not removed until later on during the 17th. Under these circumstances there was no error in admitting the physical evidence, the dirt in the jar having been shown to have the same consistency and odor as that uncovered on the 16th. *Stamps v. Newton County,* 8 Ga. App. 229 (6) (68 SE 947), is not in point — there nails were offered in evidence taken from a bridge more than a year following the accident on which the suit was based. Here the defendant Miller testified positively that no gas was put in the hole from the time the digging was started, and "to this day there hasn't been no gas poured in that hole of no kind." A sufficient foundation for the admission of the physical evidence was provided.

■ Miller sued, among other things, for loss of profits to his business, and this is particularly included as one of the issues in the pretrial order. The authenticity of the lease was also stipulated. It was in evidence and showed a five-year contract between Miller and the oil company. It was therefore not error to allow testimony by Miller,

regarding his damages and loss of business, to the effect that because of the lease other named oil companies refused to supply him with gasoline when he determined to abandon the tanks from which he was losing large amounts of fuel. This evidence was relevant to the damage incurred and was properly admitted. That Miller, in support of his cross claim, was allowed to testify from a memorandum of sales as indicated by sales tax returns and that this memorandum was allowed to go out with the jury, does not require a reversal.

· ■ Was the verdict excessive? It was within the range of the evidence, on a basis of difference in market value of the property with and without water. The case was tried two years and four months after the tanks had been removed; the area was still saturated with gasoline and there was expert testimony that this pollutant in the soil is never destroyed but remains in the ground until something moves it out. Where the verdict is supported by some evidence, courts should not interfere unless it is so excessive as to justify the inference of gross mistake or prejudice. Code § 105-2015. Neither the verdict in favor of the plaintiff nor that in favor of Miller can be held unsupported by evidence or obviously the result of prejudice or mistake.

The trial court did not err in denying the motions for new trial and judgment notwithstanding the verdict.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*