65130. MERCER et al. v. WOODARD et al.
65131. NORMAN REALTY COMPANY et al. v. WOODARD et al.

POPE, Judge.

Defendants Loyal Norman, Barbara Lee, Mabel McMillan and Eleanor Laramore purchased a home and, with the help of defendant Jack Lee (husband of defendant Barbara Lee), renovated it. The four

owners of the house were all associated with defendant Norman Realty Company. The house was advertised for sale under the Norman Realty name.

Plaintiffs Minnie and Ethan Woodard viewed the house and agreed to buy it. Their lender, Farmer's Home Administration (FmHA), required the sellers to provide a certification that the house was free of termite damage. Defendant Barbara Lee, through defendant Laramore, contacted defendant B & G Pest-X Exterminating Company (B & G) for the required termite letter.

Defendant Rupert Mercer of B & G provided the letter although he was not licensed to do so. After the closing, FmHA objected to the letter because it did not meet their standards. Rather than certifying there was no termite damage, the letter merely stated no live termites were found and it also included a disclaimer that it was not a guarantee. Defendant William Smith of B & G thereafter provided FmHA with two letters which together were satisfactory.

Shortly afterward, plaintiffs discovered substantial termite damage to the house. They filed suit against defendants, alleging fraud and conspiracy to defraud. The case proceeded to trial and the jury found in favor of plaintiffs, awarding them $22,000 in actual damages and $150,000 in punitive damages. Defendants Norman Realty Company, Loyal Norman, Barbara Lee, Jack Lee, Mabel McMillan and Eleanor Laramore appeal (Case No. 65131), asserting twenty-one enumerations of error. Defendants Rupert Mercer, William Smith and B & G Pest-X Exterminating Company assert six enumerations of error in their appeal (Case. No. 65130).

## Case No. 65131.

1. Defendants assert eleven enumerations of error challenging the trial court's refusal to give requested charges. Four of the enumerations raised contentions pertaining to requests to charge refused by the trial court in favor of its standard charges. In the first enumeration of error defendants contend that the trial court erred in refusing to give their requested charge on concealment of a material fact. The request to charge was drawn from *Jackson v. Smith,* 94 Ga. App. 697, 701 (96 SE2d 193) (1956), as quoted in *McDaniel v. Green,* 156 Ga. App. 549, 552 (275 SE2d 124) (1980), and is a correct statement of the law. See Code Ann. § 105-302 (now OCGA § 51-6-2). However, the charge given by the court instead of the requested charge was also correct. It was taken from *Batey v. Stone,* 127 Ga. App. 81 (192 SE2d 528) (1972), quoting from *Southern v. Floyd,* 89 Ga. App. 602 (1, 2) (80 SE2d 490) (1954).

It is not the province of this court to weigh a charge given against a requested charge to determine which, in our opinion, would have

been better. The scope of our review is limited to evaluation of alleged harmful errors and we will not assign error to a trial court's preference for its own language over that proposed by a party in a request to charge if the charge given, read together with the charge as a whole, correctly states the applicable law and principles such that it fully and fairly presents the issue to the jury. See *Harper v. Samples,* 164 Ga. App. 511 (5, 6) (298 SE2d 29) (1982); *Gay v. City of Rome,* 157 Ga. App. 368 (3) (277 SE2d 741) (1981); see also *Coffeen v. Doster,* 161 Ga. App. 529 (4) (a) (288 SE2d 327) (1982); *Jackson v. D.O.T.,* 159 Ga. App. 130 (6) (283 SE2d 59) (1981). Following this principle, we have reviewed the charge given on concealment and we find that, in reading it together with the other charges relating to fraud and with the charge as a whole, the charge was adequate. We therefore find no error.

Applying the same principle to the contentions raised in enumerations of error 2, 13 and 17, we find no error as well. In the second enumeration, defendants challenge the trial court's refusal to give their requested charge on their duty of disclosure of a material defect. Rather than phrasing it directly, defendants framed the request to charge in the form of an exception to the rule of caveat emptor. This could have been confusing to the jury and thus was rightly rejected. See *SCM Corp. v. Thermo Structural Prods.,* 153 Ga. App. 372 (7A) (265 SE2d 598) (1980). In the thirteenth enumeration defendants assert that it was error for the trial court to refuse their requested charge on the measure of damages. It was a good statement of the law, but, again, so was the court's. In the seventeenth enumeration defendants challenge the court's refusal to charge on conspiracy as requested; but, as with the others, the charge given was correct and thorough. Moreover, we find that the asserted deficiency in the conspiracy charge is unfounded.

2. The trial court also rejected a number of requests to charge without including the substance of these requests in its general charge and we will deal with five of defendants' challenges to these decisions herein. The first among these is the contention that the court erred in refusing the following request to charge: "I charge you that under the evidence of this case neither misrepresentation nor concealment after the sale closing can form the basis of the action." The basis of the action was the allegation that defendants knew the termite damage existed in the house and that they conspired together to conceal the defect from plaintiffs. Evidence of misrepresentation and concealment after the closing was not presented as proof of distinct claims, but as facts probative toward the fraud and conspiracy alleged in the complaint. Thus, the request to charge was not consistent with the issues before the jury and therefore was

properly refused. See *SCM Corp. v. Thermo Structural Prods.,* supra at 7(A); see also *Hill Aircraft & Leasing Corp. v. Tyler,* 161 Ga. App. 267 (8) (291 SE2d 6) (1982).

Similarly, defendants contend it was error for the trial court to refuse their requested charge that no confidential relationship existed between the sellers and the buyers. This request to charge was inapplicable because defendants' duty to disclose the existence of material defects was not predicated upon a confidential relationship with plaintiffs. See *Holman v. Ruesken,* 246 Ga. 557 (2) (272 SE2d 292) (1980); see also Division 3, infra.

Defendants further argue that the trial court erred in refusing their three requests to charge on waiver. They claim they were entitled to a charge that would instruct the jury that plaintiffs may have waived their objection to the form of the termite letter by not objecting to it at closing. We disagree. A charge on waiver would have been inappropriate because plaintiffs did not challenge the termite letter per se to show breach of contract or negligence (compare *Perloe v. Getz Exterminators,* 163 Ga. App. 397 (294 SE2d 640) (1982); *Johnson v. Landing,* 157 Ga. App. 313 (277 SE2d 307) (1981)), but used the letter as evidence of the exterminating company's involvement in the conspiracy to defraud.

Defendants requested the court read certain lengthy contract provisions setting forth the buyers' duties and they claim it was error for the court to refuse the request. We disagree. The substance of the request to charge was duplicitous of evidence the jurors would have before them during their deliberations. Moreover, the request to charge dealt with specific contractual obligations (factual evidence), rather than principles of law, and for this reason also it was properly refused.

Finally, defendants assert that the trial court erred in refusing seven requests to charge regarding a seller's right to make general commendations of the property (puffing) and to express opinions about the property. We find that these requests to charge, while certainly valid in the abstract, would have screened the real issue, that is, whether the representations made were fraudulent. The trial court fully charged the essential elements constituting fraud (see Code Ann. § 105-302) and the jury thereby knew by what standards to evaluate the representations for a determination of liability. Thus, while the evidence would have supported some reference to puffing in the charge (see *South v. South Fulton Hosp.,* 162 Ga. App. 581 (1) (292 SE2d 90) (1982); *SCM Corp. v. Thermo Structural Prods.* supra), we find no reversible error in excluding it.

3. Defendants next assert as error the refusal of the trial court to give their request to charge that "concealment of a defect is not

actionable and plaintiffs cannot recover upon it unless such defect constitutes an imminently dangerous condition." The authority cited for this proposition is *Tison v. Eskew,* 114 Ga. App. 550 (151 SE2d 901) (1966), which can be read to support it although it has not been so read in cases citing it, e.g., *Lively v. Garnick,* 160 Ga. App. 591 (1) (287 SE2d 553) (1981); *McDaniel v. Green,* supra.

We find that reliance on *Tison v. Eskew* is misplaced for two reasons. The first reason is that the case is factually distinguishable. In *Tison v. Eskew,* there was no warranty of structural soundness of the property, whereas the required termite letter in the case at bar was such a warranty in effect. The second, and more compelling, reason is that the duty of disclosure has been enunciated in more recent and superior authority. In *Holman v. Ruesken,* supra at 558, the Supreme Court stated: "We made clear in *Wilhite [v. Mays,* 239 Ga. 31 (235 SE2d 532) (1977), aff'g 140 Ga. App. 816 (3) (232 SE2d 141) (1976)] that when the defects in the property were of such a nature that the buyer could not discover them through the exercise of due diligence, the burden was on the seller to disclose the seriousness of the problems of which he was aware, provided that the seller knew that the buyer was acting under a misapprehension as to facts which would be important to the buyer in making his decision." See also *P.B.R. Enterprises v. Perren,* 243 Ga. 280 (4) (253 SE2d 765) (1979). Actionable concealment is a failure to disclose a material fact with the intent to deceive and mislead (Code Ann. § 105-302), which follows from a failure to disclose as required in *Holman* and *Wilhite.* We hold therefore that the request to charge presented an erroneous principle of law (as related to the facts and issues of this case) and the trial court was thus correct in refusing it.

4. Defendants contend that the trial court erred in refusing to give their requested charge that punitive damages could not be assessed unless all defendants found liable were also found guilty of the requisite conduct. The authority cited in support is *Chupp v. Henderson,* 134 Ga. App. 808 (3) (216 SE2d 366) (1975). The principle noted therein was "where several defendants are sued jointly, exemplary damages are not recoverable against any of them unless all are liable therefor. . . ." Id. at 812. We express no opinion as to this principle because we find it is not applicable to the case at bar. Defendants were not sued jointly per se, but under a conspiracy theory. In a conspiracy, the act of one is the act of all. *NAACP v. Overstreet,* 221 Ga. 16, 22 (142 SE2d 816) (1965); *Higginbotham v. Harden,* 137 Ga. App. 143 (2) (223 SE2d 156) (1975). Under the allegations, the proof and the jury charge, to find each of the defendants liable here, the jury would have had to find each one either guilty of actual fraud or conspiracy to defraud. Punitive

damages are allowable against all defendants found liable under either theory. See *Youngblood v. Mock,* 143 Ga. App. 320 (2) (238 SE2d 250) (1977); see also *Grainger v. Jackson,* 122 Ga. App. 123 (2) (176 SE2d 279) (1970). Thus, under the circumstances here, liability for damages carried with it potential liability for punitive damages. The request to charge was therefore inappropriate and rightly rejected.

5. Defendants contend that "[t]he court erred in charging the jury that the measure of damages was the difference in the value of the property as it should have been and as it was rather than charging that the measure of damages was the cost of repair." This contention is inaccurate. The trial court charged that "the measure of damages in an action for fraud and deceit is the actual loss sustained, and if the contract is one of purchase and sale the actual damages are the difference between the value of the thing sold at the time of delivery and what its value would have been if the representations made had been true. This difference in value may be shown by evidence of the reasonable cost of correcting the defect, that is, the cost of repair." This charge was taken directly from *Reid v. Minter,* 137 Ga. App. 799, 800 (224 SE2d 849) (1976), quoting from *Windsor Forest, Inc. v. Rocker,* 115 Ga. App. 317, 322 (154 SE2d 627) (1967), and is a correct statement of the law. *Orkin Exterminating Co. v. Bryan,* 163 Ga. App. 804, 805 (294 SE2d 683) (1982). We therefore find no error.

6. In two enumerations of error, defendants assert that it was error to allow plaintiffs' two expert witnesses on damages to testify. Defendants argue that it was shown that neither witness was qualified to give his opinion as to the cost of repairs of the house. We disagree. The first witness was qualified as an expert based upon his experience as a builder and his personal examination of the damage to the house. The second witness was qualified as an expert based upon the fact that he was a licensed real estate broker experienced in appraisals and upon his personal examination of the house.

Defendants' challenge to the testimony of the first witness rests, for the most part, on his reluctance to give a precise estimate, or even a reasonably confident estimate. To be sure, assessment of damages cannot be the result of speculation, conjecture or guesswork. *D.O.T. v. Bird,* 158 Ga. App. 369, 370 (280 SE2d 394) (1981); *Smith v. Barfield,* 157 Ga. App. 231 (2) (276 SE2d 899) (1981). However, the witness did eventually give an estimate with reasonable certainty, laid upon a proper foundation. The difficulty plaintiffs' counsel had in reaching that point affects the weight, not the admissibility, of the evidence. See *Orkin Exterminating Co. v. Thrift,* 154 Ga. App. 545 (1) (269 SE2d 53) (1980). The verdict evinces that the jury found the testimony entitled to some weight and we will not now substitute our

judgment. See *Ideal Pool Corp. v. Poss,* 144 Ga. App. 651, 652 (242 SE2d 318) (1978); *Reid v. Minter,* supra at 801; *North Ga. Petroleum Co. v. Lewis,* 128 Ga. App. 653 (4) (197 SE2d 437) (1973).

The challenge regarding the second witness focuses on his testimony of values not includable in the cost of repair. The jury was later instructed on the correct measure of damages and the extent that this witness' estimate of the cost of repair may have been influenced by extraneous considerations was for the jury to decide.

7. Defendants claim the trial court erred in refusing to allow plaintiff Mrs. Woodard to be asked whether she considered defendant Jack Lee's statement that the house was sound as a statement of fact or an opinion. Defendants argue that the answer would have been relevant because an action for fraud cannot be based on the rendering of, and the reliance upon, an opinion (puffing). While it is true that an action for fraud cannot lie where a plaintiff has erringly relied upon a mere opinion (see *Wilkinson v. Walker,* 143 Ga. App. 838 (1) (240 SE2d 210) (1977); *Randall v. Smith,* 136 Ga. App. 823, 824 (222 SE2d 664) (1975)), it does not follow that Mrs. Woodard's understanding or impression of how the statement was intended had any probative value. The whole basis of this case is that defendants allegedly deceived and misled plaintiffs regarding the structural soundness of the house. Thus, if she were to have said her impression of the statement was that it was intended as an opinion rather than a statement of fact, it would not have tended to prove anything because, if defendant Jack Lee had then been trying to deceive and mislead her, her impression would have been colored by the fraud being perpetrated upon her. Thus, her answer would not have provided any probative evidence to aid the jury in deciding whether the statement was a fraudulent misrepresentation or mere puffing. It was better for the trial court to disallow the question seeking this answer and to let the jury decide the issue upon the surrounding facts and circumstances. See *Wallis v. Odom,* 130 Ga. App. 437 (1) (203 SE2d 613) (1973).

8. Defendants claim that the trial court erred in allowing plaintiffs' counsel to cross-examine Mrs. Woodard and ask leading questions. Counsel for defendants Mercer, Smith and B & G called Mrs. Woodard as a defense witness when plaintiffs objected to her being recalled for further cross-examination. (See Division 14, infra.) This tactic entitled counsel for plaintiffs to cross-examine her just like any other defense witness. Code Ann. § 38-1705 (now OCGA § 24-9-64); compare Code Ann. § 38-1801 (now OCGA § 24-9-81) and cases annotated thereunder. While the court could have, in its discretion, prohibited counsel from posing leading questions, we find no abuse of discretion in allowing them. See Code Ann. § 38-1706

(now OCGA § 24-9-63); *Lauchheimer & Sons v. Jacobs,* 126 Ga. 261 (2) (55 SE 55) (1906).

9. Defendants contend that the trial court erred in allowing Mrs. Woodard to testify that the house would cost her $124,000 over the mortgage period. We agree that this was irrelevant. Plaintiffs implicitly concede this, but argue that it was merely cumulative of evidence already admitted without objection. This is not entirely correct. The evidence referred to by plaintiffs was a promissory note which included the principal amount and interest rate from which the jurors arguably could have calculated the total indebtedness, but it did not include the $124,000 figure. The assertion that the testimony was merely cumulative is thus an overstatement.

It was error to admit the irrelevant evidence. Code Ann. § 38-201 (now OCGA § 24-2-1). However, "[i]t is an old and sound rule that error, to be reversible, must be harmful." *J. L. Lester & Sons v. Smith,* 162 Ga. App. 506, 511 (291 SE2d 251) (1982). "Error is presumed harmful unless it appears to have no effect upon the result of the trial." *Ga. Power Co. v. Bishop,* 162 Ga. App. 122, 126 (290 SE2d 328) (1982). In view of the fact that the cost of the house had no bearing upon the issue of liability and that the award of actual damages was supported by competent evidence and the award of punitive damages was not excessive (see Division 11, infra), it appears that the erroneous admission of the evidence complained of had no effect upon the result of the trial and therefore the error was harmless. *Sabo v. Futch,* 226 Ga. 352 (2) (175 SE2d 16) (1970); *Orkin Exterminating Co. v. Thrift,* supra.

10. Defendants' contention that the denial of their motion for directed verdict constitutes reversible error is without merit because, as is shown throughout this opinion, substantial issues remained for jury resolution, as is the norm in a fraud case. See generally *Plough Broadcasting Co. v. Dobbs,* 163 Ga. App. 264 (1) (293 SE2d 526) (1982).

A challenge is also raised to the denial of defendant Jack Lee's motion for directed verdict. He claims he cannot be liable to plaintiffs because he was neither an owner nor a seller of the house. This claim is without merit because there is no requirement of privity as a predicate to liability for either fraud or conspiracy to defraud. See Code Ann. § 105-302. There was ample evidence in this case creating a jury question as to this defendant's liability either for actual fraud, i.e., whether he made an overt act of wilful misrepresentation (see Division 7, supra), or conspiracy to defraud, e.g., whether defendant had knowledge of the termite damage, as suggested by his renovation work on the house, and whether he conspired with the other defendants to conceal this known defect from plaintiffs to deceive

and mislead them.

It is also contended that the trial court erred in denying the motion for directed verdict on behalf of defendant Norman Realty Company. Contrary to the claim that it, as an entity, was not involved, there is substantial evidence that it was involved, including that the four owners of the house were associated with the company, that the house was advertised for sale under the company name and that the company was involved in the closing. With this evidence probative of the company's participation in the conspiracy, a directed verdict would have been improper. Code Ann. § 81A-150(a) (now OCGA § 9-11-50(a)); see also Division 12, infra.

11. Defendants' final contention is that the trial court erred in denying their motion for new trial on the ground of excessiveness of the verdict. We cannot say as a matter of law that the award of the $150,000 in punitive damages prayed for was so excessive as to demand a new trial. Determination of the amount of punitive damages necessary to deter recurrences of such conduct is rightfully a jury function and we will only disturb their determination if it is blatantly egregious. *Smith v. Milikin,* 247 Ga. 369 (3) (276 SE2d 35) (1981); see also Code Ann. § 105-2002 (now OCGA § 51-12-5); *Carter v. Carter,* 139 Ga. App. 548 (3) (228 SE2d 708) (1976).

The same holds true for the award of actual damages. *Jones v. Spindel,* 128 Ga. App. 88 (2) (196 SE2d 22) (1973). The amount awarded was within the range of the estimates of cost to repair given at trial and therefore it cannot be said to be excessive. Code Ann. § 105-2015 (now OCGA § 51-12-12); *Ideal Pool Corp. v. Poss,* supra at 652; *North Ga. Petroleum Co. v. Lewis,* supra at (4).

Case No. 65130.

12. Defendants Mercer, Smith and B & G Pest-X Exterminating Company assert six enumerations of error. The first is that the trial court erred in refusing their requested charge on fraud. The request to charge focused nearly entirely on misrepresentation. Such an emphasis was unwarranted by the allegations and evidence. Although misrepresentation was involved, this was a case for fraud and conspiracy to defraud, with an emphasis on concealment. The charge given amply covered the principles of fraud and we therefore find no error. See Divisions 1 and 2, supra.

13. Defendants contend that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict. A grant of either such motion is authorized only when the evidence and all reasonable deductions therefrom demand a verdict in favor of the movant. Code Ann. § 81A-150(a) and (b). Defendants make a fairly convincing argument that plaintiffs did not prove all

the essential elements of fraudulent misrepresentation, but this argument is insufficient because plaintiffs did not limit themselves to that theory. Plaintiffs alleged and sought to prove fraud in general and conspiracy to defraud and the evidence presented (primarily the termite letters in regard to these defendants) clearly created jury questions as to these allegations. See *Plough Broadcasting Co. v. Dobbs,* supra at (1).

14. Defendants next contend that the trial court erred in refusing to allow counsel for B & G to call plaintiff Mrs. Woodard for the purpose of cross-examination. This contention is specious. When it came time for B & G to present its case, as the last defendant, counsel for B & G called Mrs. Woodard for cross-examination. Plaintiffs objected and the court remarked that counsel had already conducted a thorough cross-examination of Mrs. Woodard after her direct testimony. Counsel then immediately announced that he was calling her as his own witness and examined her accordingly. There was no error. See Division 8, supra.

15. Defendants assert that the "court erred in refusing to allow Mrs. Woodard to be cross examined as to her knowledge as to what [these defendants] actually did." They refer to two questions disallowed by the court. The first question asked her " . . . what part did [these defendants] have to play in perpetrating any conspiracy on you?" The second asked her if she "gained any knowledge other than what [she] had at the time of closing with respect to any activities of [these defendants]?" Plaintiffs urge that we "make a definitive ruling as to the propriety of this type of question." We will endeavor to do so.

We hold that both questions were improper and thus were rightly disallowed. The first question asked Mrs. Woodard something she was incompetent to answer, that is, in her opinion what conduct of defendants constituted conspiracy to defraud. See *Wallis v. Odom,* supra at (1); Code Ann. § 38-1708 (now OCGA § 24-9-65). The second question apparently sought to elicit a response impeaching her testimony. The answer to the question was obvious: yes, she did learn more about defendants' activities since the time of closing, after all, that is the purpose of discovery. If defendant suspected that Mrs. Woodard gave testimony from what she learned through discovery, rather than what she had firsthand knowledge of, the proper manner to attack that testimony would have been to ask specific questions seeking to expose the errant testimony. The blanket question posed was improper and we hold that the trial court acted well within its discretion in disallowing it.

16. Defendants lastly contend that the admission of hearsay in the case constitutes reversible error. Plaintiffs' counsel asked

defendant Barbara Lee (case no. 65131) a question regarding a telephone conversation she had had with a representative of Farmer's Home Administration. Her response included the words "he told me." Defendants' counsel immediately objected on the ground of hearsay and the objection was overruled.

Plaintiffs argue that we should reject the contention because the objection at trial was inadequate to preserve the issue on appeal, citing *Shaw v. State,* 241 Ga. 308 (2) (245 SE2d 262) (1978). The objection made was: "Objection. Hearsay, your Honor." We find that this objection was sufficient here. Words like "he told me" are classic signals of hearsay and counsel needed to do no more than call it to the court's attention.

Plaintiffs also argue that the testimony of what this defendant was told was admissible as original evidence to explain her conduct. See Code Ann. § 38-302 (now OCGA § 24-3-2); *Arnold v. State,* 236 Ga. 534, 536-37 (5) (224 SE2d 386) (1976). We agree. Code Ann. § 38-302 transforms hearsay into original evidence when admitted to explain conduct, as was done here.

We reject defendants' contention for another reason as well. After identifying the question, objection and answer, defendants' entire argument is: "This reference to the July 25 letter written by Bob Mercer was obviously harmful and should have been ruled out." Such a deficient argument is tantamount to an abandonment of the enumeration of error under Court of Appeals Rule 15(c) (2) (Code Ann. § 24-3615(c) (2)). *Evans v. State,* 159 Ga. App. 706 (285 SE2d 47) (1981).

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED MARCH 17, 1983 —
REHEARING DENIED MARCH 31, 1983 — 

*David J. Kelley,* for appellants (case no. 65130).

*Manley F. Brown, H. T. O'Neal, Jr., M. Stan Ballew, F. Kennedy Hall, Ralph F. Simpson, Joseph B. Gray, Jr.,* for appellees.

*F. Kennedy Hall, Roy Benton Allen,* for appellants (case no. 65131).

*H. T. O'Neal, Jr., M. Stan Ballew, David J. Kelley,* for appellees.