A99A1233. CARTER et al. v. MURPHEY.
(526 SE2d 149)

PHIPPS, Judge.

This case arose out of a real estate development that went bad. The parties attempted to develop 250 acres of land along the Savannah River in McCormick County, South Carolina. When the project failed, Alexander Murphey sued C. E. Carter and Margaret Carter for $208,747.94 on a contract for reimbursement. The Carters countersued Murphey to recover $500,000 that they had invested in the project. They alleged that Murphey breached a separate contract and breached a fiduciary duty he owed to them. A jury returned a verdict of $202,814 for Murphey. The Carters were awarded nothing on their counterclaim.

The Carters appeal, presenting two issues. First, did the trial court err by denying the Carters' motion for continuance which was based on the absence of their expert witness who had been subpoenaed? Second, was the evidence sufficient to support the jury's award to Murphey? We find that the trial court abused its discretion when it denied the Carters' motion for continuance, and we reverse on that ground. Because we find that there was evidence to support it, we affirm the jury's award to Murphey.

In 1983, Murphey, a physician, learned of an opportunity to buy

property which was known as Furey Plantation. Murphey approached the Evans brothers about purchasing the property with him. The Evans brothers had experience in real estate development. They insisted that C. E. Carter, an electrical contractor, be allowed to join the group. Murphey agreed on the condition that he would be a participant in the development of the property. Eventually, the four purchased the plantation. The venture was titled Furey Development, Inc. About 1985, the Evans brothers wanted to quit the venture, and Murphey and Carter bought them out.

In 1987, Murphey and Carter decided to develop Furey Plantation as a residential subdivision. Murphey had participated in the development of a medical care building and, by this time, had obtained a broker's license and opened a business called Murphey Real Properties, Inc.

Furey Development, with Murphey acting as president, contracted with Murphey Properties to develop Furey Plantation. Murphey Properties was to be paid $100,000 plus additional fees. Carter transferred his shares in Furey Development to his wife and continued to act as an officer. Murphey and the Carters obtained mortgages totaling approximately $1.25 million to finance the development.

Murphey and Carter learned that a portion of the plantation was in a flood plain. Murphey contacted the Federal Emergency Management Authority (FEMA) and submitted a certification that the development would not affect the flood level in the area. They continued with plans to develop the property, even though FEMA did not respond to the certification.

Murphey Properties marketed the development as an exclusive subdivision and began selling lots along the riverside in 1987. Brochures detailed plans for a gated entrance, a boat ramp and dock, a clubhouse, tennis courts, swimming pools, and fitness trails.

During construction of the clubhouse in 1990, a FEMA representative inspected the subdivision and declared that all existing construction, including homes and the clubhouse, violated federal requirements for building in a flood plain. FEMA banned further construction in the development until existing construction was brought into compliance with federal standards or until no-rise certificates were provided. The ban was in effect for over two years, until Murphey supplied the requested certificates.

Only one lot was sold after the ban began. Many of the promised amenities were never built. The development was unable to generate money, but the loan obligations continued. The development stayed alive only because Murphey personally advanced money to Furey Development.

On April 18, 1991, Murphey and the Carters signed a contract whereby the Carters agreed to reimburse Murphey for half of the

advancements he made to Furey. One month later, the Carters exercised a clause to cease advancements by Murphey that created reimbursement obligations for them. Between 1993 and 1995, Murphey and the Carters liquidated their interests in Furey Plantation. In the end, Murphey and C. E. Carter split $80,000 of unpaid debt.

In May 1997, Murphey sued the Carters for unreimbursed advancements. The Carters counterclaimed, alleging Murphey had negligently operated the development and breached a fiduciary duty to them. Subsequently, they amended their negligence claim to one of breach of contract.

1. On the day the case was scheduled for trial, August 24, 1998, the Carters moved for continuance because their subpoenaed expert witness, William Belangia, was absent. The Carters filed a written motion for continuance, and their attorney restated the motion when the judge called the case to trial. Belangia had been served with the subpoena on July 23, 1998,[1] and the Carters' attorney had informed Belangia of the trial date six days before trial. Counsel informed the court that he had not discharged Belangia from the subpoena. The judge denied the motion for continuance but ruled that he would "require [Belangia] to show cause as to why he should not be held in contempt of [c]ourt for not appearing for [the] court appearance."

"All applications for continuances are addressed to the sound legal discretion of the court. . . ."[2] We reverse only where there is a clear abuse of that discretion.[3] Our analysis is guided by the requirements of OCGA § 9-10-160 and the principle that "[a] motion for a continuance, put on the ground of 'the absence of a witness,' ought to be granted if his testimony will be 'material.' "[4] Under OCGA § 9-10-160, applications for continuances made upon the ground of the absence of a witness must show:

(1) That the witness is absent;
(2) That he has been subpoenaed;
(3) That he does not reside outside of the state;
(4) That his testimony is material;
(5) That the witness is not absent by the permission, directly or indirectly, of the applicant;

---

[1] Murphey asserts that the subpoena was not valid because it did not specifically mention August 24, 1998, as the appropriate term of court and because the Carters did not show that the proper witness fee had been paid to Belangia. The trial judge did not find, and the record does not show, a defect in the subpoena.

[2] OCGA § 9-10-167 (a).

[3] *Payton v. Green*, 179 Ga. App. 438, 439 (2) (346 SE2d 884) (1986).

[4] (Citation, punctuation and emphasis omitted.) *Ricketson v. Blair*, 171 Ga. App. 714, 717 (320 SE2d 788) (1984).

(6) That the applicant expects he will be able to procure the testimony of the witness at the next term of the court;

(7) That the application is not made for the purpose of delay but to enable the party to procure the testimony of the absent witness; and

(8) The facts expected to be proved by the absent witness.

There is no question Belangia's testimony was material. According to the Carters' motion, Belangia had years of experience in real estate development and would testify as an expert that:

It [was] poor judgment to begin a development without clearance from FEMA and without adequate financing (which caused severe problems for the development) and that the actions of the developer poisoned the atmosphere and, even after the prohibition against building permits was lifted, resulted in depressed prices for the lots and difficulty in selling the lots, leading to the failure of the development.

Also, the Carters expected Belangia to testify regarding his experiences as a purchaser of a lot in the development. As such, he was one of those who could neither build on their property nor sell it and who never saw the promised amenities.

The Carters met the requirements of OCGA § 9-10-160. Their written motion made all the necessary averments, and their attorney's representations were consistent with the statutory requirements. We find that the trial court abused its discretion in denying the Carters' motion for continuance.

Murphey argues that the Carters waived their motion for continuance because they opposed a motion for mistrial Murphey made after the close of evidence. Murphey cites no authority for this point. Further, Murphey moved for a mistrial on the ground that the Carters should not have been allowed to present their counterclaim and that evidence they introduced in support of their counterclaim and defense should not have been admitted. The Carters could not have been expected to agree to a mistrial on this basis. The grant of a mistrial would have resulted in another trial in which the Carters could not present their counterclaim and where much of their evidence would be excluded. The Carters did not waive their motion for continuance.

Murphey raises several arguments which go to the issue of whether the trial court's denial of the continuance was harmless. He asserts the counterclaim was not properly before the trial court because: (1) the applicable statute of limitation was four years, which had lapsed; (2) the Carters had not presented an expert affidavit

under OCGA § 9-11-9.1; and (3) neither Murphey nor the Carters were parties as individuals to the contract for development of Furey Plantation. Murphey presented these arguments to the trial court in a motion to dismiss and a motion for directed verdict. The trial court denied both motions. Murphey did not file a cross-appeal. Therefore, we cannot consider these assertions.[5]

2. The jury's award of $202,814 to Murphey falls "within the range of evidence and testimony" presented by Murphey.[6] Murphey and the Carters had jointly retained a certified public accountant (CPA) firm to perform a cash flow analysis on Furey Development to determine the amount of reimbursement the Carters owed Murphey. They supplied the documentation, and the CPA firm performed the analysis according to procedures upon which they agreed. At trial, a representative of the CPA firm testified that the total principal and interest due Murphey was $202,571.30. He testified that he had used a shortcut method to calculate interest and that the interest would have been greater under a longer calculation method. Murphey testified that the Carters owed him $208,747.94 and that he believed the cash flow analysis understated his damages. We do not find reversible error in the amount of damages awarded to Murphey.

Because the trial court abused its discretion in denying the Carters' motion for continuance, we reverse the court's judgment to the extent that it relates to the Carters' counterclaim. We remand the case to the trial court for a new trial on the counterclaim. We affirm the judgment of the trial court to the extent it awards $202,814 to Murphey on his claim.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 23, 1999 —
RECONSIDERATION DENIED DECEMBER 8, 1999.

*Jay M. Sawilowsky*, for appellants.
*Allen W. Johnson*, for appellee.

---

[5] *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385-386 (1) (414 SE2d 521) (1991).
[6] See *Anderson v. Chatham*, 190 Ga. App. 559, 565 (4) (379 SE2d 793) (1989); see also *Mercer v. Woodard*, 166 Ga. App. 119, 127 (10) (303 SE2d 475) (1983).