A02A0021. CARTER et al. v. MURPHEY.
(567 SE2d 326)

MILLER, Judge.

Alexander Murphey won a jury verdict against C. E. and Margaret Carter in connection with a failed real estate development. The Carters did not receive a jury verdict in favor of their claim for money invested as alleged in the counterclaim. Pursuant to an appeal, *Carter v. Murphey*, 241 Ga. App. 340, 343-344 (1) (526 SE2d 149) (1999), this Court affirmed the award to Murphey and granted a new trial to the Carters on the counterclaim on procedural grounds. After the Carters rested in the second trial, Murphey successfully moved for a directed verdict on both counts of the counterclaim, and the Carters again appeal. Discerning no error, we affirm.

Murphey was the president of both Furey Development, Inc. ("Furey"), the owner of the property, and Murphey Real Properties, Inc. ("Properties"), the developer. Murphey was also the sole shareholder of Properties and owned half the stock of Furey, the Carters owning the other half.

The first count of the counterclaim sought to allege various breaches of fiduciary duty on Murphey's part, but in fact alleged development contract breaches by Properties. In Murphey's motion for a directed verdict as to that count, he successfully argued that the Carters could not maintain a direct, as opposed to a derivative, action against him. The second count relied on the theory that the Carters were the intended third-party beneficiaries of the develop-

ment contract between Furey and Properties. In Murphey's motion for a directed verdict as to that count, he successfully argued that the Carters were not third-party beneficiaries. The Carters' appeals as to these substantive matters are addressed herein in Divisions 2 and 3, respectively.

1. The Carters first raise a procedural point. In the first trial, Murphey moved for a directed verdict on the counterclaim, which was denied. As noted, however, the jury awarded the Carters nothing on their counterclaim, and they appealed the denial of a continuance on it. *Carter*, supra, 241 Ga. App. at 340. Murphey did not cross-appeal the denial of his motion; therefore, this Court could not consider his assertions of the reasons he felt the counterclaim was not properly before the trial court. Id. at 344 (1).

The Carters contend that Murphey's failure in *Carter* to cross-appeal the denial of his first trial motion for a directed verdict barred him from asserting at the second trial the defense he unsuccessfully presented at the first trial. A grant of a new trial, however, requires the case to be heard de novo unless the appellate court directs otherwise. *Bankhead v. State*, 253 Ga. App. 214, 215 (1) (558 SE2d 407) (2001). "The grant of a new trial eliminates everything which is pending in the old trial. When a new trial is granted, the effect is to set aside all proceedings in the old trial. Where a new trial has been granted, the case stands ready for trial as if there had been no trial." (Citations and punctuation omitted.) Id. Thus, a trial court in a second trial is free to grant a directed verdict based on the new mix of evidence presented at the second trial, regardless of whether the denial of a directed verdict motion was appealed in the first trial. Cf. *Tyson v. Cheek Mechanical &c. Svc.*, 218 Ga. App. 134, 135 (460 SE2d 536) (1995).

2. (a) Disputing the directed verdict granted on Count 1 of the counterclaim, the Carters argue that they had standing to plead that count directly, as contrasted with a shareholder's derivative proceeding under OCGA § 14-2-740 et seq. asserting Furey's claims. This count alleged that Murphey was the president of both Furey and Properties and was also the alter ego of the latter. It further alleged that he was the developer of a subdivision owned by Furey and that the Carters were 50 percent shareholders in Furey, to whom he owed fiduciary duties. It incorporated the development agreement between Furey and Properties and alleged that under it, Murphey was to do all the work in the development of the subdivision. The count alleged finally that the Carters lost their investment of over $300,000 due to Murphey's various breaches of fiduciary duty.

The unsupported allegation that Murphey was the developer of the subdivision is contradicted by the express language of the development agreement that Properties was the developer of the subdivi-

sion and was to do the development work. All but one of Murphey's alleged "fiduciary duty" breaches were breaches of duties owed to Furey (not to the Carters) by Properties as the developer. Furey may thus have had a cause of action for breach of contract against Properties.

The only way that Furey could have brought such an action directly against Murphey was on a theory that Murphey was Properties' alter ego. Our review of the record, however, revealed no evidence attempting to pierce the corporate veil of Properties and to establish that Murphey was the alter ego of Properties. See *Dews v. Ratterree*, 246 Ga. App. 324, 327, n. 3 (540 SE2d 250) (2000) (stating elements of alter ego theory). Accordingly, even assuming the *Carters* could have brought a direct action against *Properties* (*Parks v. Multimedia Technologies*, 239 Ga. App. 282, 293 (5) (520 SE2d 517) (1999)), the direct action against Murphey that they have attempted in their counterclaim must fail for lack of proof of an alter ego theory.

(b) The remaining breach specified in the counterclaim was that when the development desperately needed money, Murphey on behalf of Furey refused to sell part of the development — ostensibly so his Properties company would receive more development fees — and then later had to sell it for less. This was possibly a breach of Murphey's fiduciary duties owed as president to Furey (and indirectly to the Carters). The appropriate avenue to pursue this alleged breach was a derivative action. In *Matthews v. Tele-Systems*, 240 Ga. App. 871, 872 (2) (525 SE2d 413) (1999), we held that breaches of fiduciary duty are generally causes of action belonging to the corporation and may be asserted by a shareholder only in a derivative action. We noted that there was an "exception to this rule [only] where the plaintiff-shareholder can show that the wrongful acts caused a special injury unique to him, i.e., separate and distinct from that suffered by other shareholders of the corporation." (Footnote omitted.) Id. at 872-873 (2). *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994), agrees, holding that "[w]e adopt this test and hold that, outside the context of a close corporation, a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action." (Footnote omitted.) Accord *Jamal v. Pirani*, 227 Ga. App. 713, 714 (2) (490 SE2d 140) (1997) (holding that the close corporation exception mentioned in *Grace Bros.*, supra, requires a *statutory* close corporation). Here, as in *Jamal*, nothing in the record showed that Furey was a statutory close corporation. 227 Ga. App. at 714 (2); see OCGA § 14-2-902 (a).

Thus, even assuming that there was a viable claim against Murphey as president of Furey for breach of fiduciary duty in deciding, for a self-interested reason, to pass up an opportunity that allegedly

would have been favorable to Furey, that claim belonged to Furey, and the Carters have not alleged or shown that they were injured in a way different from the other shareholder or independently of the corporation. See *Grace Bros.*, supra, 264 Ga. at 819 (2); *Jamal*, supra, 227 Ga. App. at 714 (2). The Carters' reliance on Division 2 of *Parks*, supra, 239 Ga. App. at 286-288, is misplaced because except in statutory close corporation situations, both the most recent pertinent decision of this Court, *Matthews*, supra, 240 Ga. App. at 872-873 (2), and the most recent pertinent decision of the Supreme Court of Georgia, *Grace Bros.*, supra, 264 Ga. at 819 (2), require a special injury unique to the complaining shareholder.

3. The Carters also contend that the trial court erred in granting a directed verdict to Murphey on the second count of their counterclaim. That count asserted that (a) Murphey breached the development agreement by failing to do the work of a real estate developer in a skillful and workmanlike manner, and (b) the Carters were the intended third-party beneficiaries of the agreement. Even assuming that the Carters were such beneficiaries, however, that would only permit a potential recovery by them against Properties (the party to the development agreement), not Murphey. This claim also fails for lack of proof of the alter ego theory.

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 14, 2002 —
RECONSIDERATION DENIED JUNE 27, 2002

*William A. Trotter III, Jay M. Sawilowsky*, for appellants.
*A. Rowland Dye*, for appellee.